## F. M. AND O. G. BALDWIN *v.* A. N. McKAY.

1. EVIDENCE: BEST EVIDENCE MUST BE INTRODUCED.—The best evidence of which the case, in its nature, is susceptible, is required to be produced; and under this rule, where a contract of sale is reduced to writing, the terms of the sale cannot be established by parol evidence.

2. SALE: SALE OF GOODS, PART OF AN ENTIRE BULK TITLE DOES NOT PASS UNTIL PART SEPARATED.—Where goods, part of an entire bulk, are sold, the contract is incomplete and no property passes, if such part is not separated and distinguished from the bulk.    Chitty on Cont. 398; 37 Miss. R. 353; 2 Kent's Com. 496.

3. SAME: SAME: CASE IN JUDGMENT.—McKay purchashed from Baldwin eight bales of cotton, each to weigh four hundred and fifty pounds, out of a lot of unginned cotton supposed by the parties to be ten bales.    The cotton purchased was not distinguished and separated from the bulk, and was to remain in the possession of the vendor until one year after the war.    Subsequently plaintiffs in error, under an arrangement between Baldwin and themselves, took possession of the entire lot of cotton, ginned and baled the same, and it turned out only six bales.    Held—That the property in the cotton did not pass by the sale to McKay, even though there may have been only eight bales in the entire lot at the time of the sale.

4. INSTRUCTIONS TO JURY: MUST NOT LEAVE QUESTIONS OF LAW TO THEIR DECISION.—In an action of trover, where the title of the plaintiff depends upon questions of law, it is improper to instruct the jury that if they believe the plaintiff was the owner of the property and the defendant converted the same to his own use, they will find for the plaintiff.    The jury should have been instructed as to whom the property belonged, upon a hypothetical state of facts applicable to the case.

5. DISCONTINUANCE AS TO ONE CO-DEFENDANT AFTER VERDICT AND JUDGMENT.—The discontinuance of an action of trover as to one co-defendant after verdict and judgment, is no ground for the reversal of the judgment as to the other defendants.

ERROR to the Circuit Court of Madison county. Hon. J. A. P. Campbell, judge

McKay brought an action of trover against plaintiffs in error to recover six bales of cotton which they had illegally converted to their own use: McKay claimed title by purchase from Mrs. Boles in 1863. After the surrender in 1865, Mrs. Boles, being advised by her son-in-law, Jno. S. Robinson, that she could hold the cotton, gave him the management of it. Robinson turned the cotton over to F. M. Baldwin and O. G. Baldwin for the purpose of paying a certain note of Robinson's to one Powell, and upon which the Baldwins, J. C. Richards and W. J. Taylor were the securities. The Baldwins took possession of the cotton with the knowledge and consent of Mrs. Boles, had it ginned and baled, and sold it, and applied part of the proceeds to the payment of Robinson's note to Powell, and the balance they paid to Robinson.

An abstract of the testimony will be found in the opinion of the court.

The jury returned a verdict for McKay against all the defendants. When the motion for a new trial came on to be heard, plaintiff discontinued his action against Richards and Taylor, to which the other defendants excepted.

The 1st and 12th instructions asked by the defendants in the court below, and refused, are as follows: 1. If the jury believe from the evidence, that McKay and Mrs. Boles entered into a contract by which she agreed to sell him eight bales of cotton to weigh 450 lbs. each; that the cotton was then in the seed, not weighed, and in a bulk of cotton supposed to contain ten bales, and the eight bales was not at the time separated from the supposed ten bales; that she was to haul it to a gin, have it ginned, furnish bagging and rope and bale it up, and haul and deliver it in Canton at request, after the war, and then and there ascertain its identity and weight, and for all which he paid her $720 in Confederate treasury notes, and it was agreed between them that she was to retain and keep the cotton until so divided, hauled, ginned, baled, weighed and delivered—then said contract of sale was illegal and void, and she was not bound by it, nor

did he in law acquire a legal title thereto and if she, intending to avoid the contract, permitted and authorized Robinson afterwards to take and control the cotton as he saw proper, and he did so take and control the cotton with her assent and authority, and these defendants acted under him in good faith in all they did touching the cotton, then the law is for the defendants, and the jury will so find.

12. If the jury believe from the evidence that the cotton sued for was never ginned, baled, or weighed until after the same went into the possession of O. G. Baldwin, and that by the terms of agreement between Mrs. Boles and Samuel Melton, as the agent of plaintiff, McKay, the cotton agreed to be sold by Mrs. Boles to McKay was not to be delivered until twelve months after the close of the war, and that the cotton now sued for was sold by Baldwin, believing at the time he had a right, and was acting in good faith, on the 13th of October, 1865, and before the expiration of the said twelve months, then plaintiff's right of immediate possession has not accrued at the time of the alleged conversion, and the law is for the defendants, and they will so find.

*Luckett and Fearn*, for plaintiffs in error, contended:

1. That the court erred in permitting the witness Melton to testify as to the terms of the contract of sale, when it was disclosed by his own testimony that the contract was in writing. (Starkie on Ev. 499; 11 Mass. R. 27; 1 Philips on Ev. 2 Am. ed. 217; Walker's R. 115; 8 Pick. 329; 16 Johns. 193; 2 McCord, 167; 4 S. & M. 31; 2 ib. 54; 1 Sneed, 228; 2 ib. 684.)

2. That the contract, as stated, does not show a sale of the cotton; there was no delivery; it was not separated from the bulk. 2 Greenleaf's Ev. § 638; 13 Mass. R. 87; 15 Johns. R. 349. McKay's remedy is against Mrs. Boles for so much money had and received to his use, and not against plaintiffs in error in this form of action. The case of *Ingersol* v. *Kendall*, 13 S. & M. 12, does not conflict with the authorities cited, so far as this particular action is concerned.

3. That to sustain his action McKay must have had a right

of possession at the time of the alleged conversion. The cotton was not to be delivered to him until twelve months after the close of the war, and only upon demand. No demand was ever made, and the suit was brought to the March term, 1866.

4. That it was error to discontinue the suit as to Taylor and Richards. The verdict of the jury was against all the defendants, and a right of contribution existed between them—a right which could not be taken away or impaired without the consent of all the defendants. The action of the court releases Taylor and Richards, and throws the whole liability upon the Baldwins, and being made after verdict was good ground for new trial. *Floyd* v. *Woods & Co.* 4 Yerger, 165.

The judgment must conform to the verdict. 4 Yerger, 158. The verdict in this case was against all the defendants, the judgment as amended only against two.

*A. P. Hill*, for defendant in error, contended:

1. That the testimony of Melton as to the contract for the purchase of the cotton was properly admitted. This suit was not between the parties to the written contract, Mrs. Boles and McKay.

If A in 1863 purchase a horse from B, and subsequently the horse is converted by C, it is not necessary for A to introduce the bill of sale from B for the horse; he can prove ownership without the writing.

2. That the title to the cotton passed by the sale. The money was paid, eight bales were contracted for, and as there were only six in the pen, it was a sale of the entire lot. McKay assumed the risk and left the cotton with Mrs. Boles as a mere bailee. That it was a sale, the contract fully executed, and the risk of the property upon the purchase, is shown by the following authorities: 15 Johns. R. 350; 6 Barn. & Cress. 360, 388; 6 Taunton, 617; 20 Pick. 280; Parsons on Cont. 435; 10 Bingham, 512.

3. No demand of defendants was necessary. A demand is never necessary when a conversion is shown; but it is urged that a demand should have been made of Mrs. Boles: she was a mere bailee, and to make her responsible on her contract of

bailment it would be necessary to make demand; but this is not necessary when an actual conversion is shown.

4. Notwithstanding the conflict in the decisions as to the question of delivery and the kindred one of ownership, it is believed that no case can be found where the risk of the property is not with the true owner. When a contract of sale exists, and the only relation between the parties is that of vendor and vendee, the risk is never in one and the property in another. The vendor may agree to become the bailee of the property sold, and may become responsible for the exercise of certain care in its custody or management; still the risk of the property as owner is not with him. The risk by this contract, being with the vendor, shows a present property in him.

5. But it may be urged that, no delivery having been made to McKay, plaintiffs in error, having first got possession of the property, are entitled to hold it. But these plaintiffs had notice of the rights of McKay. The rule is, that a purchaser acquires a good title as against prior purchasers who have obtained possession where the subsequent purchaser has no notice of the prior sale. *Babcock* v. *Gill*, 10 Johns. R. 287.

6. That the charges asked by defendant in error were properly given by the court, and those of plaintiffs in error properly refused.

HANDY, C.J., delivered the opinion of the court.

This was an action of *trover*, brought by the defendant in error, to recover the value of six bales of cotton weighing four hundred and fifty pounds each, alleged to have been purchased by him from one Eliza Boles in October or November, 1863; to which the defendants below pleaded the general issue and several special pleas.

On the trial below, the plaintiff introduced as a witness Samuel Melton, who was asked by the plaintiff whether the plaintiff owned cotton on the premises of Eliza Boles; and thereupon the defendants objected to the witness answering the question, and asked him if the evidence of the plaintiff's title to the cotton about which he was interrogated, was in writing,

and in the nature and terms of a contract signed by plaintiff and Mrs. Boles; to which he replied that it was in writing, so signed, and was in his possession. But the court overruled the objection, and permitted the witness to answer, and to state the terms of the contract by which the cotton in controversy was alleged to have been sold by Mrs. Boles to the plaintiff. To this, the defendants excepted, and this is the first error assigned.

It appears that the title of the plaintiff consisted in a written contract by which he became the purchaser of the cotton, in which the nature and terms of the purchase were stated; and it was shown that this written instrument was in the possession of the witness. It was the best evidence of the contract, and should have been produced. This is, without question, the established rule of law; and its wisdom as a general rule is clearly shown in the subsequent proceedings in this case, by which it appears that the case turned to a considerable degree upon the exact terms of the contract by which the plaintiff became the purchaser of the cotton in controversy.

We think the court erred in not sustaining the objection, and in not requiring the plaintiff to produce the written contract.

The next errors assigned are the instructions granted for the plaintiff; and those asked in behalf of the defendants, and refused or modified; and the overruling of the motion for a new trial on the ground that the verdict was not sustained by the evidence.

The propriety of these assignments depends mainly on the evidence adduced on the part of the plaintiff, to show title to the cotton in controversy in the plaintiff; which, as it appears in the record, is to the following effect:

Samuel Melton testified that the plaintiff was the owner of eight bales of cotton in 1863, on the plantation of Mrs. Boles, to weigh four hundred and fifty pounds each, but then in the seed and in a house on the farm over a mile from her residence; that plaintiff had not sold or disposed of the cotton; that he was agent of plaintiff, and resided within eight miles of Mrs. Boles; that plaintiff resided in Panola county; that the witness

purchased the cotton as agent for plaintiff in August, 1863, from Mrs. Boles, who represented to him that she was the owner of ten bales of cotton in the seed in a house on her plantation, and that it was in one common bulk, and proposed to sell him the whole ten bales ; that he declined to buy ten bales, but agreed to buy eight bales of the cotton, and she agreed to sell him eight bales ; that she said she thought there were ten bales, but he told her she had better sell eight, it might not hold out, and the contract was, that the cotton was to remain where it was in the house until after the war, and was then to be hauled by her to some neighboring gin (she having none), ginned, with bagging and rope furnished, baled, hauled, and delivered at Canton, and there weighed, and to weigh four hundred and fifty pounds each bale, all at the expense and labor of Mrs. Boles, and for which he paid her $720 in Confederate treasury notes at the time of the purchase, being twenty cents per pound for the cotton when delivered, including all that the seller was to do ; that he agreed to release her from liability if the cotton was destroyed by unavoidable accident before delivery at Canton, and it was to be delivered there in a reasonable time after the war ended, after request to do so, and it was to be at the plaintiff's risk.

Mrs. Boles testified to the contract substantially as the witness Melton, and that she had a lot of cotton in 1863, in the seed, in a room of a house on her plantation, which she estimated at ten bales, eight bales of which she sold to Melton, as agent for plaintiff; that she did not sell the lot of cotton to plaintiff for eight bales more or less, nor as a whole, but sold him eight bales of the lot or pile.

It further appears by the evidence, that the cotton was removed from the plantation in August, 1865, and taken to the plantation of Owen G. Baldwin, who had it ginned and baled, and hauled it to Canton and sold it, and that it turned out six bales ; that the roof of the house where the cotton was, on Mrs. Boles' plantation, had several bad leaks in it, and the cotton was badly rotted in several places, and a large amount of it was rotted so that the witness who hauled the cotton from that place

Baldwin *v.* McKay.

had much trouble in separating the rotten from the other cotton in loading the wagons.

On this evidence the question arises, whether the plaintiff acquired such title to the eight bales of cotton as to entitle him to maintain *trover* against a subsequent purchaser from Mrs. Boles.

According to the evidence, it must be taken that there were ten bales of cotton in the bulk owned by Mrs. Boles, and stored on her plantation, at the time of the sale. It was so estimated and stated by her to the plaintiff's agent at that time, and he made the purchase under the idea that he was purchasing eight of the ten bales, then in bulk on the plantation, to be afterwards separated, ascertained, and delivered. On this state of facts the law is well settled to be that, "where goods, part of an entire bulk, are sold, the contract is incomplete, and no property passes, if such part has not been distinguished and separated from the bulk. Until the parties are agreed as to the specific identical goods, the contract can be no more than a contract to supply goods answering a particular description; and since the vendor would fulfil his part of the contract by furnishing any parcel of goods answering that description, out of the entire bulk, it is clear that there can be no intention to tranfer the property in any particular lot of the goods more than another, until it is ascertained which are the very goods sold. Chitty on Contr. 398. *Thomas* v. *The State*, 37 Miss. 353." "The goods sold," says Ch. Kent, "must be ascertained, designated, and separated from the stock or quantity with which they are mixed, before the property can pass." 2 Kent's Com. 496.

Against the conclusion to which these principles clearly lead, it is insisted, in behalf of the defendant in error, that, inasmuch as there turned out, after the cotton was ginned, only six bales of the entire parcel owned by Mrs. Boles and stored on her plantation, that in fact McKay purchased the entire lot when he purchased eight bales, and that no separation of the bales purchased by him from the bulk was necessary to pass title. But in the first place, such was clearly not the understanding of the parties at the time of the purchase, and the question

whether title to the eight bales contracted for passed to the plaintiff, must be determined by the understanding of the parties in regard to the quantity and condition of the bulk of cotton at the time of the sale. And, secondly, it appears, by the testimony of the witness, Wm. A. Baldwin, that the cotton in the bulk was badly rotted, and that a large amount of it was thereby lost, and was rejected from that which was hauled away to be ginned. This may account for the failure of the cotton to produce the number of bales calculated on by the parties when the purchase was made.

The instructions, as they are set forth in the record, are exceedingly prolix and voluminous, and many of them, as they are transcribed in the record, are unintelligible. We will advert to such as appear to be objectionable.

The second instruction, at the instance of the plaintiff, directs the jury that if they believe from the evidence that McKay was the owner of the cotton on the 13th October, 1865, and that the defendants sold and converted it to their use, they should find for the plaintiff.

This instruction submitted the whole law of the case to be determined by the jury. Whether the plaintiff was the owner of the cotton or not, was a question of law, to be determined by the court, after the ascertainment by the jury of the facts of the case. It was the province and duty of the court to direct the jury that, if they believed from the evidence that such or such were the facts, then the plaintiff was or was not the legal owner of the cotton ; but to tell the jury that if they believed from the evidence that he was the owner of the cotton, was to leave them without instructions as to the rules of law to govern them in determining that issue, and to submit the law of the case to them. This mode of giving instructions is destructive of the safeguards which the law throws around legal rights, by referring to the courts the determination of questions of law, thereby rendering the rules of property settled and stable, and removing them from the arbitrary caprices of juries. We think this instruction erroneous under the facts of this case. *Young* v. *Power,* at last term.

We think that the 12th instruction asked by the defendants was improperly refused. It states that if the cotton paid for was never ginned, baled, or weighed, until after the same went into the possession of Baldwin, and that by the terms of agreement between Mrs. Boles and Milton, the cotton was not to be delivered until twelve months after the close of the war, and that the cotton sued for was sold to Baldwin in October, 1865, and before the expiration of said twelve months, believing at the time that he had the right to do so, and was acting in good faith, then the law is for the defendants.

This instruction, taken in connection with the 1st instruction given in behalf of the defendants, states the law upon the merits of the whole case: the 1st instruction having reference to the title acquired by the plaintiff under the circumstances of the purchase from Mrs. Boles, and the 12th having reference to the right of the defendants to acquire title by subsequent purchase from Mrs. Boles or her agent. This instruction should have been given, with a modification as to the twelve months after the close of the war allowed by the contract for the delivering of the cotton to the plaintiff—in which particular the instruction was not sustained by the evidence. But this matter of time is immaterial to the principle involved in the instruction.

With reference to the assignment that the verdict was contrary to the law and the evidence, and that the motion for a new trial should have been sustained on that ground, we think the assignment well taken.

The material facts of the case are few and simple, so far as they relate to the title of the plaintiff acquired under his contract with Mrs. Boles. We have above seen that they are insufficient to pass a legal title to the cotton necessary to maintain this action. And the law to that effect was stated by the court in the first instruction given on behalf of the defendants. It is manifest that the verdict was not in accordance with that rule, and that it is not supported by the evidence.

The last error assigned is, that on the hearing of the motion for a new trial, the court permitted the plaintiff to discontinue

the action as to the co-defendants Taylor and Richards, against the objection of the other co-defendants.

The objection may have weight with reference to the effect the discontinuance may have upon the rights and liability of these plaintiffs in error. But we do not perceive how it is available to them by writ of error to that proceeding. If the plaintiff thought fit to discontinue his action as to two of the defendants after verdict, he had the power to do so, taking the hazard of the effect that step might have upon the subsequent liability of the remaining defendants. But such a discharge could not be assigned for error; and we do not intend to intimate any opinion as to whether it would affect the liability of the present plaintiffs in error or not.

It follows from these views that the judgment must be reversed, the verdict set aside, and the cause remanded for a new trial.