New Orleans & N. E. R. Co. *et al. v.* Miles *et al.*

(In Banc. Jan. 22, 1945.)

[20 So. (2d) 657. No. 35752.]

Ben F. Cameron and Lester E. Wills, both of Meridian, for appellants.

850.

Nate S. Williamson and E. T. Strange, both of Meridian, for appellees.

Argued orally by **Ben F. Cameron,** for appellants, and by **Nate S. Williamson,** for appellees.

**Griffith, J.,** delivered the opinion of the court.

Appellees, the widow and children of Harvey Miles deceased, instituted an action in tort against defendants alleging that by their negligence the deceased was fatally injured by a cut of loaded coal cars being backed in a switching operation across and beyond 33rd Avenue in the City of Meridian. The declaration, when analyzed, alleges that the decedent was struck either (1) at the crossing, or (2) in close proximity thereto, or (3) at some point in close proximity to a well beaten and frequently traveled path extending in a westerly direction alongside the switch track; and the negligence alleged is (a) that the statutory crossing signal by bell or whistle was not given; (b) that no flagman was on the end of the cut of backing cars to give warning at the crossing as required by a city ordinance; (c) that no flagman or other employee gave any warning beyond said crossing when it should have been anticipated that persons would be on or along the paths aforementioned; (d) that defendant had negligently failed to have the crossing properly lighted; (e) that the said cut of cars were being switched at an excessive and dangerous rate of speed, and (f) that one or more members of the switching crew were under the influence of intoxicating liquor. It is undisputed that the injury occurred at night and that when the rescuers reached the deceased he was found about eleven car lengths, not counting engine and tender, west of the crossing.

We believe it to be reasonably clear from this record, either as to what is shown by it or as to anything it

cogently suggests, that unless decedent was struck in or upon the avenue crossing there is no liability. The record and briefs have been fully examined by two judges and fully reported at not less than two conferences as required by our usual procedure, and as a result not one of us can say that he believes it reasonably probable that the initial injury occurred in or on the avenue crossing; wherefore the first question is whether there is enough evidence on that issue under cases such as Truckers Exchange Bank v. Conroy, 190 Miss. 242, 199 So. 301, to escape a peremptory charge. As to this we have been divided in opinion, but inasmuch as the judgment must be reversed upon the instructions we resolve the doubt as to the peremptory in favor of the plaintiffs, and in the hope that, when a new trial is confined to the one controlling issue, free from the distractions and confusions of other issues not pertinent to the initial injury as having occurred in or on the avenue crossing, a better and more dependable record may be presented to another jury.

Instruction No. 1 granted at the request of plaintiffs reads as follows:

"The court instructs the jury for the plaintiffs that if you believe from the preponderance of the evidence that the defendant railroad company or any of its servants or agents negligently caused a train of cars or any one of the cars in the train about which the witnesses have testified, to injure Harvey Miles on or about the night of July 17, 1943 and that he suffered and died as a proximate result thereof, then in that event it is the duty of the jury to render your verdict for the plaintiffs."

Instruction No. 4 for plaintiffs is as follows:

"The court instructs the jury for the plaintiffs that if you believe from a preponderance of the evidence that the defendant railroad company, acting by and through its servants, agents or employees, or any one of them, at the time and place about which the witnesses have testified, operated a train of cars in such a way as to negligently endanger the life and limb of any person or

the safety of any property, and that said negligence, if any, proximately caused injury to and the death of Harvey Miles, or proximately contributed, in whole or in part, to the injuries and death of Harvey Miles, then in that event, it is your sworn duty to find for the plaintiffs, and this is true without regard to whether Harvey Miles was or was not negligent."

Plaintiffs' instruction No. 6 reads as follows:

"The court instructs the jury for the plaintiffs that if you believe from a preponderance of the evidence that has been admitted under the supervision of the court for your consideration in this case, that the defendant railroad company, acting by and through any of its servants or agents, was guilty of any negligence which proximately caused injury to or the death of Harvey Miles, or that proximately contributed, in whole or in part, to the injuries and death suffered and sustained by Harvey Miles on the occasion about which the witnesses have testified in this case, it will be your sworn duty to render your verdict for the plaintiffs whether Harvey Miles was or was not guilty of contributory negligence."

Instructions No. 5 is to the same effect and contains also the phrase "at the time and place about which the witnesses have testified" which is found in the copied Instruction No. 4. We especially call attention to the phrase in Instruction No. 6 which allowed recovery if the jury believed from the preponderance of the evidence that defendant was guilty of *any negligence* which proximately caused or contributed to the injury. (Italics ours.)

When negligence is the subject of the action, the instructions must confine the verdict to the ground or grounds of negligence alleged and *in support of which* there has been substantial proof. 1 Reid's Brannon Instructions to Juries, p. 325, sec. 117. In Hines v. McCullers, 121 Miss. 666, 676, 83 So. 734, the Court said that this rule is elementary. It is elementary, and for obvious reasons, that an instruction which will allow a jury to find negligence without giving a guide as to what specific

acts or omissions within the pleadings and proof are sufficient to constitute actionable negligence is erroneous. In support of the rule as stated we need go no further than to cite the apt and forcible language of McGowen, J., in Graham v. Brummett, 182 Miss. 580, 591, 181 So. 721. To the same effect, however, is McDonough Motor Express v. Spiers, 180 Miss. 78, 176 So. 723, 177 So. 655, and Ross v. Louisville & N. R. Co., 181 Miss. 795, 181 So. 133, 134—it being pointed out in the latter case that an instruction which does not conform to the rule "not only opens the field to any sort of negligence but as well to what the particular jury under its particular notions might deem to be negligence, although not such under the established law of the land." See also Yazoo & M. V. R. Co. v. Aultman, 179 Miss. 109, 120, 173 So. 280.

Appellees seek to avoid the effect of the obvious error by taking refuge in two instructions granted at the request of appellees by which the jury were charged that unless they believed from the evidence that decedent was struck at the crossing they must find for the defendant, and appellees say that by thus specifically limiting the jury to that particular point the roving instructions granted to the appellees were cured. In Hines v. McCullers, supra, there was an instruction for the defendants which undertook to limit the issue, but it was held that this did not cure the error. See page 677 of 121 Miss., page 737 of 83 So. But if we lay that authority entirely aside, it is to be noted that the roving instructions Nos. 4 and 5 granted to appellees referred the jury to "the time and place about which the witnesses have testified," when the witnesses had testified about times and places all the way from the crossing to the place where the decedent was found more than four hundred feet away; so that the instructions were contradictory and not curative.

Although plaintiffs did not confine themselves either by allegation or by offered proof to the assertion that the initial injury occurred in or on the crossing, it is evident that it was their main effort so to show. As a part of

this effort, the plaintiffs undertook to prove that at the hospital following the injury, the injured man made a dying declaration in which he stated that he was struck at the crossing. The court sustained the objection to this offer, and correctly so. A century ago in McDaniel v. State, 8 Smedes & M. 401, 415, 47 Am. Dec. 93, it was declared as the rule in this state that "the admission of such declarations in any case is an exception to the general rule of evidence," and that: "It is only permitted in cases of homicide, and the exception stands upon the ground of the public necessity of preserving the lives of the community, by bringing man-slayers to justice." This is the common law rule in every state, save one. The right of cross-examination is one of the most valuable, not only to an opposite party but to the general administration of justice, which our procedure affords, and only the public necessity mentioned by our court has ever in this jurisdiction been considered as sufficient to justify the withdrawal of that right.

Appellants complain that, although the court had ruled that the dying declaration of the injured man was inadmissible, the plaintiffs continued to press the matter and in various ways, in the examination of other witnesses, contrived to get before the jury what the dying man said about where he was hit, thereby forcing the defendants into repeated objections upon the same matter, and thus so impressing the jury about it that they could neither forget nor disregard it, and by a special bill of exceptions they say that plaintiffs persisted, even in their arguments to the jury, in recurring to the excluded matter.

Inasmuch as the judgment must be reversed for errors in instructions, already mentioned, we do not pursue the record in detail to ascertain whether the complaint mentioned in the foregoing paragraph is in fact sustained by the transcript. But because the case is to be retried we state the applicable rule so that if it was transgressed, a

transgression of it may be avoided in the new trial—and in all trials.

Every ruling, all singular, of the trial judge is the law of the case in the trial then being conducted. During the trial the only appeal on the law is to the trial judge himself and to get him to change his ruling; and on any argument to that end, if the matter is of serious import, it should as a rule be had, if the other side so requests, in the absence of the jury. To go over the head of the trial judge by contriving nevertheless to get to the jury what the judge has held to be inadmissible is to appeal from the judge to the jury, when under our constitutional system the judge is the exclusive agent of the state to decide what is the law in trials, including what is or is not competent evidence. It was declared by this court in a criminal case some years ago—citation to which we are not able at this moment to find—and we reaffirm it as applicable to civil as well as to criminal trials, that a substantial violation of the stated rule will open the proceedings to a motion for a mistrial. The rule is succinctly stated in 39 Am. Jur., p. 81 as follows: "So, it will constitute ground for a new trial if counsel, in disregard of the court's ruling that a certain line of evidence is inadmissible, persists in attempting to get the evidence before the jury to the prejudice of the opposite party."

In the further interest of the validity of a new trial we deem it proper that we should mention the following matters, but which we must do in a brief matter because of the length to which this opinion has already progressed. There was no duty on the railroad company to maintain a light or a permanent watchman at the crossing. Nor do we see, as a probability, that the speed of the cars at the crossing could have had any causal connection with the injury—not to stress the point that it would seem highly improbable, if not impossible, that a cut of thirteen loaded coal cars backed by an ordinary switch engine could have attained, on a rough and curved track, the speed claimed by appellees in the 366 feet between

the point of the switch and the crossing. The deposition of the fireman, Pryor, taken by defendants because he was then in the services of the armed forces, was not introduced by them. Nevertheless plaintiffs used it, as if it had been introduced, in the examination of other witnesses, a procedure which, of course, was improper. And plaintiffs went at length in the introduction of testimony to the effect that the fireman, Pryor, was drunk immediately after the accident, although it was not shown that anything done or omitted by Pryor had any causal connection with the injury whatever. Without such a showing, that testimony could have no legitimate place in the case. What these matters, mentioned in this paragraph, could have had to do with the case other than to furnish erroneously a catch-all for the roving instructions we do not see, and they ought to be eliminated in a new trial.

We do not enter upon a discussion of the instructions on the measure of damages because in the light of the criticisms made upon them the plaintiffs may, and probably will, so frame them on a new trial as not to be further bothered with these criticisms, as may be done without derogation of any substantive rights of the plaintiffs in that respect.

Finally, we notice the contention made by appellants that it was error to give for the plaintiffs the Instruction No. 9 dealing with the failure of the railroad to give the statutory bell or whistle signal for the crossing. Appellants say that there is no evidence that this failure proximately caused, or contributed to, the injury and cites New Orleans & N. E. R. Co. v. Burge, 191 Miss. 303, 2 So. (2d) 825. Apparently appellants have misinterpreted that case. In the long years during which this statute has been repeatedly before the court it has always been considered that when an injury has occurred to a person on a public railroad crossing the failure to ring the bell or to sound the whistle will raise the presumption prima facie that the injured person would have heard and acted upon the warning had it been given,

and that if an opposite conclusion is to be reached the burden is upon the railroad company to meet the presumption by proof. That was done in the Burge case, and that case, as all others, must be read in the light of its facts.

Reversed and remanded.