TYNES *v.* McLENDON

No. 41024 February 9, 1959 108 So. 2d 716

*Dudley W. Connor*, Hattiesburg, for appellant.

338

*Morse & Morse,* Poplarville; *Wm. E. Andrews,* Purvis; *Lester Clark,* Hattiesburg, for appellee.

LEE, J.

Clyde A. McLendon recovered a verdict and judgment against Mrs. Zella Tynes in the amount of $5,000 for personal injuries and damage to his car, as the result of her alleged negligence, and Mrs. Tynes appealed.

██ █ A collision between the Ford car, driven by McLendon, and a pickup truck, driven by Mrs. Tynes, occurred in the intersection of the driveway to Joe Wesley's home and the gravel road which ran north and south. The home in question was situated between 50 and 100 yards from the west side of the road. The crest of a hill was about 150 feet south of the entrance to the driveway. The road was 25 feet wide. A cattle gap, variously estimated to be from 6 to 13 feet from the road, extended across the driveway.

McLendon was returning from Bogalusa, Louisiana, late in the afternoon of May 2, 1957, driving north. Mrs. Tynes had visited her daughter, Mrs. Wesley, and, with her 14 year old son Norman, had started back home.

According to McLendon he was driving 35 to 45 miles an hour. As he came over the top of the hill, Mrs. Tynes came out of the driveway at a rapid rate of speed, looking north, and did not stop in the driveway. She did not look in his direction until he applied his brakes and locked his wheels. When she stopped her truck, it was over half way across the road. Although he did everything that he could, he was unable to stop his car and avoid the collision.

Mrs. Tynes stated her version in this way: ''I came across the cattle gap and stopped my truck dead still. I looked south and north and everything was clear and

then I looked back south and \* \* \* there he came and I put on my brakes dead still and stopped and he came on in on me and hit me''. She also said, ''I came across the cattle gap and stopped dead still and looked both ways and everything was clear. I got in position to get ready to move and looked again and there he came. I put on my brakes and was dead still.'' She further said that her right front wheel just got out into the road, and that McLendon came over on her side of the road and hit her. She had seen McLendon come over the top of the hill, at which time she ''was just getting ready to move''. Norman corroborated her version.

Jewell Alford, a county patrolman and deputy sheriff, was called to the scene. He testified that the point of impact was about the middle of the road. This could be determined by the signs in the gravel. The right front wheel of the truck was about the middle of the road and the car was alongside of it. He observed skidmarks from the car southward for about 120 feet. They were on the proper side of the road when first applied. It was 123 feet from the center of the cattle gap to the top of the hill. McLendon said at the time that he had drunk ''a bottle or so of beer'', but he was normal, could talk plainly and was in control of his faculties.

Mrs. Tynes, Norman, her daughter Mrs. Fern Wesley, and son-in-law Joe Wesley, testified that McLendon had ample room to pass on the east without colliding with the truck because several cars even passed the scene after the wreck. Some of these and another witness or two testified that McLendon admitted that he had drunk some beer and was in a hurry.

On the contrary McLendon testified that he drank only one pint bottle of beer at Bogalusa, and was not under its influence. His brother, Paul, who drove up shortly after the collision, gave corroboration to him in this respect; and also testified that there was a bank about 2 feet high on the east side of the road; that the ditch was

6 to 9 inches deep; and that while cars could pass the disabled vehicles, they had to get partly out of the road.

Thus there was a sharp dispute as to where the collision occurred, as to which driver was to blame, as to whether McLendon should have avoided a collision by passing on the east side, and as to whether McLendon was under the influence of intoxicating liquor. Obviously the determination of these issues was for the jury.

In the two cases of Jones v. Carter, 192 Miss. 603, 7 So. 2d 519, and 195 Miss. 182, 13 So. 2d 623, the verdicts for the plaintiff, in each instance, were held to be against the great weight of the evidence. The reason for that conclusion was that Carter, from a distance of 468 feet east of the intersection, had seen the Jones car as it was driven from a distance of 44 feet, south of the intersection, almost entirely across the 20 foot pavement, and yet, Carter did nothing to check his speed until he was within 43 feet of the Jones car, which, at that time, had its front wheels on the north shoulder. In the present case, McLendon, as soon as he came over the hill and saw the truck, skidded his car for a considerable distance in an effort to prevent the collision. Manifestly the appellant can get no comfort from those cases.

In Meo v. Miller, 227 Miss. 11, 85 So. 2d 568, a verdict for the defendant was held to be against the great weight of the evidence because Miller drove his truck into and across the intersection at a time when Meo's car was only 60 to 100 feet from the intersection, and, in spite of the fact that Meo, for about 800 feet, had seen Miller drive up to the intersection and stop. If the verdict had been for the appellant in the present case, it could have been argued with much vigor that, under Meo v. Miller, supra, the verdict was against the great weight of the evidence because the appellant admitted that she saw the McLendon car some distance away. Although she denied that she got farther than the edge of the road, the jury resolved that dispute against her.

Mrs. Tynes admitted that she saw the McLendon car as it came over the top of the hill. There was substantial evidence to show that the impact occurred about the middle of the road, which meant that Mrs. Tynes had entered the intersection. It was the province of the jury to say whether the approaching automobile constituted such a hazard that Mrs. Tynes should have yielded the right of way to it. The appellant was not entitled to a directed verdict. The issue was for the jury; and the verdict was not against the great weight of the evidence.

McLendon testified that Pittman Ford Company repaired the damage to his car. When the estimate sheet was offered, defense counsel objected, saying "he (McLendon) stated he fixed it and he can tell what it cost to fix it, your Honor". The witness then said, "$296.56 is what it cost" to repair the damage to the car after the collision with Mrs. Tynes. The response of the witness complied strictly with counsel's suggestion, and the court can not be put in error on that account. Under the circumstances, there is no occasion for the application of the principle in National Fire Ins. Co. of Hartford v. Slayden, et al, 227 Miss. 285, 85 So. 2d 916, and Brown & Root, Inc., et al v. Continental Southern Lines, Inc., et al, 228 Miss. 15, 87 So. 2d 257.

 The trial court gave the appellee seven instructions on the merits. Complaint is made that all of these instructions were erroneous. One of them clearly was, and ought not to have been given. It is as follows:

"The court instructs the jury for the plaintiff that if you believe from a preponderance of the evidence in this case that the plaintiff was injured on the date and at the place in question, and that the defendant was operating her motor vehicle in a negligent manner at said time and place, and that the injuries and damages to plaintiff were proximately caused by the negligence of defendant, then it is your sworn duty to find for the plaintiff in this case."

This type of instruction has been repeatedly condemned, and the court is at a loss to understand why attorneys continue to request, and trial courts continue to give, it. In Rawlings, et al v. Royals, 214 Miss. 335, 58 So. 2d 820, a similar instruction was under review, and the Court said: "This instruction is clearly erroneous for the reason that it would allow the jury to find negligence without giving any guide as to what acts or omissions within the pleadings and proof are sufficient to constitute actionable negligence. It simply turned the jury loose to grope in the darkness without any light to guide them as to what would or would not be negligence. Such an instruction has been condemned by this Court on so many different occasions that it is surprising that Plaintiff's attorneys will continue to request it and trial courts will continue to grant it. The following are some of the cases in which we have condemned it: Meridian City Lines v. Baker, 206 Miss. 58, 39 So. 2d 541, 8 A. L. R. 2d 854; McDonough Motor Express, Inc. v. Spiers, 180 Miss. 78, 176 So. 723, 177 So. 655; Southern Railway Co. v. Ganong, 99 Miss. 540, 55 So. 355; Baldwin v. McKay, 41 Miss. 358; Young v. Power, 41 Miss. 197; Yazoo & M. V. R. Co. v. Cornelius, 131 Miss. 37, 95 So. 90; New Orleans & N. E. R. R. Co. v. Miles, 197 Miss. 846, 20 So. 2d 657; Hines v. McCullers, 121 Miss. 666, 83 So. 734; Graham v. Brummett, 182 Miss. 580, 181 So. 721; Ross v. Louisville & N. R. R. Co., 181 Miss. 795, 181 So. 133; Yazoo & M. V. R. R. Co. v. Aultman, 179 Miss. 109, 173 So. 280.

"A review of the foregoing authorities shows that in those cases where the other instruction did not correctly inform the jury as to the acts or omissions constituting negligence we have held the error to be prejudicial and have entered orders of reversal; on the other hand, in some of the cited authorities, where the instructions as a whole did correctly inform the jury as to what would constitute negligence, we have held that the granting of an instruction similar to that above quoted did not con-

stitute such prejudicial error as to require a reversal. After a careful review of all the instructions granted in the case at bar we have reached the conclusion *that the jury was correctly charged as to the applicable law on negligence and consequently we will not reverse this case, but again we drop a word of warning to the trial judges throughout the state against the granting of such an instruction.* Instructions should be confined to the issues of fact and law applicable to the case and should not deal in such unrestrained generalities.'' (Emphasis, supplied).

Although the instruction was erroneous, after a review of the instructions for the appellee and the five given instructions on the merits for the appellant, the Court has concluded ''that the jury was correctly charged as to the applicable law on negligence''. For that reason the cause will not be reversed, but again the Court emphatically inveighs against the giving of such an instruction.

██ The evidence for the appellee was to the effect that, as the result of the collision, he sustained a blow on the side of the face and head which caused cataracts to form on his eyes, thereby resulting in substantial damage to his vision. The amount of the verdict therefore cannot be adjudged to be grossly excessive.

The Court finds no reversible error in the record and the cause is therefore affirmed.

Affirmed.

*McGehee, C. J.,* and *Kyle, Arrington* and *Gillespie, JJ.,* concur.