HATTIESBURG BRICK WORKS, INC. *v.* CONERLY

No. 43402          March 15, 1965          172 So. 2d 774

*Dudley W. Conner*, Hattiesburg, for appellants.

*Breed O. Mounger, Breed O. Mounger, Jr.,* Tylertown;
*Edward J. Currie, Sr. & Jr.,* Hattiesburg, for appellee.

LEE, C. J.

N. C. Conerly instituted this suit in the Circuit Court of Walthall County against the defendants Hattiesburg Brick Works, Inc., with its home office in Forrest County, Mississippi, and its truck driver, Ernest Ross, whose residence was also in Forrest County, Mississippi, and Wilbert Ratliff, a resident of Walthall County, Mississippi. The charge in the declaration was, simply stated, that all of the defendants were guilty of joint and concurrent negligence, which proximately caused the injuries allegedly sustained by him. Thus the issue was whether or not the defendants were guilty of the charge lodged by him against them.

The events out of which this litigation arose occurred on August 1, 1961 near the concrete overpass of the Southern Railroad over Highway 49 south of Hattiesburg, Mississippi. The occurrence developed out of the movement of three motor vehicles, which were proceeding north in the east lane of this four-lane highway. The leading vehicle, the owner not named, was loaded with hay. The second vehicle was a pickup truck, owned and operated by Ratliff, in which Conerly was, with others, a passenger. The third vehicle was a truck, used

to deliver bricks for the Hattiesburg Brick Works, Inc., and was operated by Ernest Ross. The hay truck had been ahead of the other vehicles for some distance south. Ratliff decided that he could pass the hay truck by cutting left into the other north lane. It was while he was undertaking to do this that a collision occurred between the pickup and the brick trucks.

At the close of the evidence, following the instructions given by the trial court, the jury found a verdict for the plaintiff in the sum of $10,000 against all three defendants. It is from the judgment entered thereon, that the Hattiesburg Brick Works, Inc., appealed.

■■ ■ The versions of the parties were substantially as follows: Conerly, 50 years of age, was riding in the pickup, paid $1 a day for his transportation to and from his home near Tylertown to Camp Shelby, south of Hattiesburg where the men were working. The pickup had side planks, with seats running lengthwise on the platform. He was sitting on the west seat, facing east. He described the experience somewhat as follows: The work day ended about 3:30. As they were returning home, they ran up behind a pickup truck with some hay on it, and, when Ratliff cut over to go around this truck, the driver of another truck ran up behind them and struck their vehicle like ''he was going to shove us off — he struck us in the back.'' He said that Ratliff was driving arount 45 miles an hour and the other driver was going around 70 miles an hour. But this evidence as to speed of the brick truck was objected to and the court sustained the same on the ground that negligent speeding was not charged in the declaration.

Ernest Ross, called as an adverse witness, admitted that he was familiar with this particular road; that the cars collided about 50 feet south of the overpass; and that the pickup turned over at the south entrance of the viaduct and was headed back south. The left fender was torn loose. The truck had been dragged that

distance. He was traveling at a speed of 42 miles. He said that, when he was approaching the pickup, he had slowed up somewhat and the pickup started from behind the hay truck. Then he blew the horn and the pickup went back. When the brick truck got nearly even with the back of the pickup, it drove out again and whipped off the road into the curbing. On that account the brick truck also got off the pavement. He said that he was in the left lane and he was trying to pass the hay truck within 50 feet of the viaduct, and that there had been about 100 feet between the trucks. At that time, he was in the left lane and continued in that lane as he was expecting to pass; that the pickup turned into the left lane, and at the same time was also trying to pass; and that they collided. The brick truck traveled about 100 feet before Ross knew that there had been a collision. There was no damage to his truck whatever. He said that the impact was 50 feet from the viaduct and that he blew his horn when the pickup started out but that it continued and he did not put on his brakes because when the horn was blown, the pickup started back in his lane. However the driver of the pickup again turned to the left and this is when the collision occurred.

Ratliff's version was that he was driving about 45 to 50 miles an hour; and that the hay truck was in front of him and he wished to pass it. He said he looked in his mirror twice, did not see any vehicle behind him, gave a hand signal by sticking his hand out the window, and he then pulled over. Besides he did not hear a horn. He was not expecting anything behind him, when he was struck. He could not explain which side the brick truck was on because he did not see anything behind him when he went to make his left turn. Two others besides Conerly were seated behind the cab, namely J. C. Holmes and Eddie Smith. He had followed the hay

truck for some distance, and, after he had gotten into the left lane, the truck struck him twice.

Other evidence had to do with photographs and testimony of traffic officers as to the results.

A consideration of the respective versions by the two principal actors, Ross and Ratliff, presents a sharp dispute as to the circumstances under which the collision between the pickup and the brick trucks occurred and as to whether either or both of the drivers were to blame. On the one hand, the jury could find that Ratliff turned into the left lane too quickly. But on the other hand, he testified that he looked into the mirror twice, could see no vehicle behind, and that he then held out his left hand, trying to indicate that he was making a turn into the left lane. While Ross testified that, when the pickup first started to turn to the left, he blew his horn, and the pickup returned to its lane. But then immediately, the pickup cut back and into his left lane, which Ross was then occupying. At the same time, both Ratliff and Conerly testified that they heard no horn. Again, the question arose as to the control of the brick truck. Even though Ratliff testified that he was traveling at a speed of 45 to 50 miles an hour, Ross was attempting to pass. Ross knew that the pickup was desirous of passing the hay truck. He said that it turned back when he blew his horn. Yet he increased his speed and admitted that he did not apply his brakes before or at the time of the collision, and not until he had gone some distance down the highway.

Obviously, the determination of these issues was for the jury. Consequently, the appellant's requested peremptory instructions were properly overruled. Tynes v. McLendon, 235 Miss. 336, 108 So. 2d 716 (1959).

Appellant says that the appellee's instruction No. 1 was erroneously given. However, as that instruction is explained by at least five others, it was not objectionable.

██ Appellant contends that its unnumbered instructions, set out at pages 53-54, 55, 56, and 57 of the record, were erroneously refused. The first mentioned erroneously invoked the sudden emergency doctrine. The applicable principle on the question was given it in an instruction, shown at page 47 of the record. The instruction at page 55 was actually announced in other given instructions for appellant. The refused instruction at page 56 of the record was a peremptory to find for Ross and the appellant, and was of course properly refused. The refused instruction at page 57 was a peremptory that the driver of the pickup was guilty of negligence. The conflict in the evidence did not warrant such an instruction.

██ The next complaint is based on a bill of exceptions because of this situation: In the course of the argument, counsel for the brick company and Ross read to the jury the following instruction: "The court instructs the jury for the defendants, Ernest Ross and Hattiesburg Brick Works, that under the undisputed evidence in this case the plaintiff's driver was guilty of negligence as a matter of law, and if you find from the evidence that the negligence of the plaintiff's driver was the sole proximate cause of the injuries and damages, if any, sustained by the plaintiff, then it is your sworn duty to find for the defendants, Ernest Ross and Hattiesburg Brick Works." Thereupon, the presiding judge stated that he did not recall having given that instruction. Upon examination, the judge explained that, as he was considering all of the instructions, he determined that this one should not be given; that he laid it aside; and that, by inadvertence, he marked it "given". He then explained to the jury that he had marked this "given" through inadvertence, and he was withdrawing it. As requested by counsel, the court signed the bill of exceptions.

88 C.J.S. *Trial* section 378, at 962 (1955), says: "The court may also, after granting a written preargument request to charge, withdraw it from the jury if it determines that it states the law erroneously." The presiding judge explained to the jury that this instruction was given by inadvertence; and that he was withdrawing it. He cast no aspersion whatever on counsel, or anyone else; but accepted the full blame himself. This was exactly what he should have done, and there was no error in this regard.

██ ■ The next complaint is that the jury was coerced into a verdict, because the jury had been kept together for two hours and five minutes after submission of the case. One of the jurors knocked on the door, told the bailiff that they were in confusion, and wanted to ask the judge a question. There was no response from the judge. In a few minutes, the jury asked for a piece of paper, and in a short time, they came into court with the verdict. Following the verdict, counsel for appellant walked into the jury room, and found in a waste basket some slips of paper and also a piece of paper. On this were written the words "All", "Brick Truck", and "Ratliff". If these papers have any real significance, 9 of the 12 slips of paper actually named both trucks and 3 only named the brick truck. The court finds no merit in this contention.

The Court is unable to say that the verdict in this case is against the great or the overwhelming weight of the evidence.

██ ■ Appellant claims that the verdict is grossly excessive and evinces bias, passion and prejudice.

Conerly testified that he was thrown out of the pickup truck, hit the ground on his head, and was knocked unconscious. He did not know anything until sometime the next afternoon, when his wife came and took him to the hospital in Tylertown. There he was treated by Dr. Walter Crawford. He did not fully recover his rea-

son for several days. There were various injuries to his body. After he was in the hospital at Tylertown for five days, he was taken home. From time to time, he was brought back to Dr. Crawford for examination and treatment. With the exception of the visits to the doctor, he had to remain in bed for about 8 months. In trying to get around, he used crutches for several months. His suffering and pain were described as intense. At the time of the trial, the appellee claimed that he was still disabled and could not do any work.

Dr. Walter Crawford testified that plaintiff was in his hospital from August 2 to 7; that the brain suffered trauma or shock, together with dizziness and headaches; that had had a large blood clot on his right thigh, which was several weeks in clearing; that he saw him 12 times after he left the hospital; that he observed the continuing symptoms; and he saw him on January 26, 1963. The plaintiff had stiffness in his leg, back and shoulders, and pain in his neck. He had to have opiates. In the doctor's opinion, the plaintiff was not able to carry on a gainful occupation. Hospital and medical expenses were shown to be slightly over $100.

Taking into consideration the nature and extent of the injuries, the inability of the appellee to do any work of consequence since the injury, the physical and mental pain and suffering which he has sustained, and his handicap for employment, the Court is of the opinion that the verdict, although substantial, is not large enough to evince any passion or prejudice, and that it should not be disturbed.

Consequently, the cause is affirmed.

Affirmed.

*Ethridge, Gillespie, Jones and Patterson, JJ.,* concur.